CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

FEB 2 1 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |
|---|---|
| SUSAN G. CRIST, | Civil No.: 5:10cv00106 |
| Plaintiff, | |
| v. | REPORT AND RECOMENDATION |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant | By:  Hon. James G. Welsh U. S. Magistrate Judge |

Susan G. Crist brings this action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her application for a period of disability and disability insurance benefits ("DIB") [1] under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The record shows that the plaintiff protectively filed her application on August 20, 2007, alleging that she became disabled beginning August 1, 1999 due to "fibromyalgia, anxiety, neck tear injury, depression, allergies, pain, soreness, stiffness, tiredness, fatigue, joint problems, tremors, stabbing pain, chest spot injury, bowel problems, migraine headaches, nausea, phobia, body twitches and tremors, obsessive compulsive disorder, inflammation of knees and thigh,

---

[1] The plaintiff's insured status for DIB expired December 31, 2001. (R.14,86,106).

drop desire (*sic*), brain electrical zappings (*sic*), concentration, [and an inability to] sleep." (R.12,89,97,106,110). After an administrative hearing (R.21-45) the presiding administrative law judge ("ALJ") issued an unfavorable decision. (R 12-20). Along with her request for the Appeals Council to afford controlling decisional weight to the opinions of G. W. Harper, M.D., she submitted twenty-five pages of additional office records from Dr. Harper variously dated during the decisionally relevant period (R.451-474) and miscellaneous additional insurance and diagnostic coding forms from Dr. Harper's office (R.477-504). (R.172-173,176,178,450). This request for review was denied (R.1-5), and the unfavorable written decision of the ALJ, dated November 1, 2009, now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with his Answer to the plaintiff's Complaint, the Commissioner filed a certified copy of the Administrative Record ("R."), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on February 25, 2011 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities, and each has also been heard at oral argument.

I.  **Summary and Recommendation**

Using the agency's five-step evaluation process, the ALJ made the following pertinent determinations: (1) the plaintiff had not engaged in substantial gainful work activity during the

2

period from August 1, 1999, her alleged disability onset date, through December 31, 2002, her last insured date for DIB; (2) during this decisionally relevant period fibromyalgia [2] was her only *severe* [3] impairment; (3) this impairment was not of sufficient severity to meet or medically equal an impairment listed in 20 U.S.C. pt. 404, subpt. P, appx. 1; and (4) based on consideration of the entire record, through her last insured date the plaintiff retained the functional ability to perform a full range of sedentary work.[4]

On appeal the plaintiff assigns error to the ALJ's finding that she retained the functional ability to perform sedentary work. Contending that her documented long-term physician/patient relationship with Dr. Harper and her longitudinal record of seeking treatment three or four times each year for a broad range of health-related problems, including fibromyalgia and its attendant chronic pain in all areas of her spine and in all of her extremities, she argues combine to compel the conclusion that Dr. Harper's functional capacity assessment should have been given controlling weigh. Consistent with this assessment and his opinion that her disability began on

---

[2] Fibromyalgia is defined as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites."*Laxton v Astrue* 2010 U.S. Dist. LEXIS 21338 *14 (EDTn 2010) (quoting Stedman's Medical Dictionary as cited in *Willoughby v. Comm'r of Soc. Sec.*, 332 F. Supp. 2d 542, 546 (WDNY. 2004)); accord *Doe v Sec'y, HHS*, 2010 U.S. Claims LEXIS 401, *2

[3] Quoting *Brady v. Heckler*, 724 F.2$^d$914, 920 (11$^{th}$Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4$^{th}$Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. §§ 404.1520(c).

[4] **"Sedentary work"** is defined as the capacity to lift or carry 10 pounds occasionally and less than 10 pounds frequently, stand or walk about 2 hours in an 8-hour workday, and sit about 6 hour in an 8-hour workday that involves no climbing ladders, ropes or scaffolds and only occasionally involved other postural activities such as climbing stairs or ramps, balancing, stooping, kneeling, crouching, and crawling. 20 C.F.R. § 404.1567(a).

3

July 1, 2001, she argues that since that date she was physically incapable of even a low stress job. After a careful review of the full record, the undersigned concludes there is substantial evidence in the record to support both the ALJ's determination that Dr. Harper's functional assessment is not consistent with the medical signs, findings and diagnostic evidence and the ALJ's residual functional capacity determination.

## II.     Standard of Review

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642). The court is "not at liberty to re-weigh the evidence . . . or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

## III.    Evidence Summary

4

At the time the plaintiff's alleges her disability began, she was forty-one years of age. (R.25,86,89,106). She had attended school through the ninth grade and subsequently obtained a general education diploma and completed a police training course. (R.14,86,106). She last worked in February 1996, and her past relevant jobs included work as a police dispatcher and as a church secretary. (R.25,26-28,43). As regularly performed both jobs are considered skilled and sedentary in exertional level. (R.43-44).

During the decisionally relevant period, Dr. Harper's office records show that the plaintiff was seen by a nurse practitioner on only four occasions. On none of these office visits does the treatment note suggest the plaintiff was either examined or treated directly by Dr. Harper. In none is there any suggestion of any recommended activity restrictions. In none is there any suggestion of clinical testing or an objective assessment of the plaintiff's functional abilities. In none is there any indication that the plaintiff's condition suggested a medical need for referral to a rheumatologist or pain management specialist. Instead, they document only routine conservative care.

On the first of these office visits (September 28, 2000), the plaintiff was seen for the purpose of checking her fibromyalgia and depression medication. (R.474). The nurse practitioner noted that the plaintiff was in no acute distress; none of her joints was hot, swollen or tender; however, she demonstrated back pain on hip flexion. (*Id.*). She was given samples of Vioxx (a non-steroidal anti-inflammatory pain reliever) and referred to Dr. John Glick for

5

Case 5:10-cv-00106-MFU-JGW   Document 19   Filed 02/21/12   Page 5 of 15   Pageid#: 567

consideration of acupuncture treatment.[5] (*Id.*). On her next office visit (May 7, 2001), she was seen with complaints of various pneumonia-related symptoms. (R.465-466). On the third and fourth office visits (September 12 and October 18, 2001) the plaintiff presented with multiple complaints, including generalized pain, stiffness, weakness, numbness, depression, and headaches with attendant vomiting. (R.452-453,461-462). In September the nurse again found the plaintiff to be in no acute and to have no tenderness in the low back; she was, however, found to have a healing herpetic papules on the right buttocks and to exhibit point tenderness in the knees, elbows and abdomen bilaterally; her prescription for Vicodin was renewed. (R.461-462.). When seen the following month, the nurse noted that the plaintiff reported that her depression was better and that she had gone four days without pain; however, she was now experiencing a lightening-like pain along her left arm, pain in her right leg, neck and back, soreness in her insides, and afternoon tiredness. (R.452). The treatment note again records the fact that the plaintiff was in no acute distress and had no hot or swollen joints, but she was continuing to have hip, elbow and back. (*Id.*).

During the period before expiration of her insured status, Dr. Harper's office records additionally record the plaintiff's several telephonic requests for various medication refills. These include approved refills for Vicodin (a narcotic pain reliever) on December 4, 2000, and again in March and April 2001; for Ambien (an anti-insomnia sedative) on January 22, 2001; for Xanax (an anti-anxiety medication) on February 1 and again on July 19, 2001; for Zoloft (an

---

[5] The record contains no evidence or suggestion that the plaintiff acted on this referral.

anti-depressant) on March 7, 2001; for Aciphex (a heartburn reliever) on July 16, 2001; and for Elavil (an anti-depressant) on April 4 and again on November 14, 2001. (R.451,463-464,467-473).

Before her DIB insured status expired, the medical record additionally documents the plaintiff's treatment at Rockingham Memorial Hospital ("RMH") on three occasions. However, none appears to have any direct bearing on her claim of disabling fibromyalgia. In March 1999 she was seen for treatment of an acute headache. (R.375-376). Five months later she returned with complaints of persistent nausea secondary to severe migraine headaches. (R.370-374). On March 4, 2001 for a third time she sought treatment at RMH for same complaint. (R.361-363,365-366). On that occasion she was admitted for treatment of right lower lobe pneumonia, and the following day she was discharged home "in good condition." (R. 361-362).

As part of the state agency's consideration of the plaintiff's claim, her then-available records were twice assessed by medical and psychological reviewers. Both medical reviewers concluded that neither her fibromyalgia, nor a neck tear nor her short-term hospitalization for pneumonia in 1999 was of disabling severity and that through her date last insured she retained the functional ability to perform work at a light exertional level. (R.396-401,426-427). Similarly, both reviewing psychologists concluded that the record failed to demonstrate any severe mental impairment during the decisionally relevant period. (R.402-414,428-429).

More than six years after the plaintiff's DIB eligibility expired, Dr. Harper completed two functional capacity forms. In the first, dated April 15, 2008, he stated that he had been

7

seeing the plaintiff "3 or 4 times a year for over 8 years for treatment of her "fibromyalgia, chronic fatigue syndrome, [and] degenerative disc disease of the cervical spine," that the plaintiff also suffered from depression and anxiety, that her "constant pain [was] complicated by anxiety," that these conditions prevented her from performing any form of competitive work on a regular and sustained basis, and that this disabling condition had persisted since "August 2004." (R421-425,444-448). Three months later, in a second questionnaire response Dr. Harper essential reiterated the same information with exception of stating that the plaintiff's fibromyalgia complaints dated from June 2001. (R.433-437, 439-443). And one year later, in June 2009 Dr. Harper retracted *sub silentio* his previous opinion that the plaintiff's disability onset date was August 2004 and opined that it had begun as of "July 1, 2001." (R438).

Presumably to demonstrate the fact that Dr. Harper has been the plaintiff's primary care physician and has had a significant longitudinal history of treating the plaintiff, she has filed approximately 160 pages of Dr. Harper's office records variously dated between January 15, 2002 and November 14, 2007.(R185-329,381-394). After the ALJ' issuance of his unfavorable decision, she filed with the Appeals Council two Trigon benefit explanations dated during the year 2000 (R.477-480) and several 2000-2001 coding forms from Dr. Harper's office (R,481-504).

## IV. Discussion

The issue presented by the plaintiff on appeal is whether the ALJ in the first instance and the Appeals Council in the second instance erred by failing to give controlling decisional weight

8

to a 2008 functional assessment of Dr. Harper and his later statement that since July 1, 2001 she had lacked the residual functional ability to perform even low stress sedentary work on a regular basis due to fibromyalgia and attendant pain, chronic fatigue, and degenerative cervical disc disease.

## A.

To be afforded controlling weight, as the plaintiff contends, this treating physician's assessment and conclusions must be well-supported by objective medical evidence. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting 20 C.F.R. § 404.1527(d)(2)). In the record before the court, the requisite objective medical evidence is lacking. As the ALJ appropriately noted in his decision, in this case the medical record is devoid of any supporting physical examination, test results, laboratory finding, or other objective medical evidence to support Dr. Harper's opinion. (*See* R.18-19). In effect, the medical records from Dr. Harper's office compel a rejection of Dr. Harper's opinion.

Moreover, those records dated prior to the expiration of her insured status demonstrate only the most conservative of treatment by Dr. Harper's nursing staff, and those dated later suggest no medically significant change in this conservative treatment regime during any potentially pertinent period. (R.451-464, 466-474; *see* R.267-298). Other than the single suggestion of a nurse practitioner that the plaintiff consider trying acupuncture, Dr. Harper's office records contain no recommendation or suggestion of a rheumatologic evaluation or other specialized treatment. They contain no suggested need for trigger point injections, physical therapy, or other treatment to relieve the plaintiff's symptoms. They contain no clinical testing

9

results or other assessment of the plaintiff's functional limitations. They contain no suggestion of any medically appropriate physical restrictions on her activities, and they otherwise contain no support for Dr. Harper's opinion that the plaintiff had a disabling fibromyalgic condition before her insured status expired.

Instead, Dr. Harper's records document only routine pharmacologic treatment for her chronic pain complaints. They inescapably suggest that Dr. Harper's opinion and functional assessment were both largely based on the plaintiff's subjective complaints, and as the ALJ noted neither Dr. Harper nor the plaintiff submitted any evidence upon which to base a finding that the plaintiff's fibromyalgia was a debilitating condition before her insured status expired or that Dr. Harper's assessment was entitled to controlling decisional weight. (R.18). *See* 20 C.F.R. § 404.1527. Moreover, as the ALJ outlined in his decision, the scope of the plaintiff's activities do not suggest a debilitating physical condition. [6] Therefore, contrary to the plaintiff's contention on appeal substantial evidence supports the ALJ's decision as rendered, including his rejection of Dr. Harper's opinion that her fibromyalgia was a debilitating condition prior to the expiration of her insured status.

**B.**

---

[6] As the ALJ stated in his decision, among other things the plaintiff's activities, included the ability to paint a window frame, use a brush chopping machine, care for her grandchildren, completely run business as a rental property manager, and independently drive a car "despite her allegations of significantly high levels of pain," do not support a finding that her fibromyalgia was a disabling condition. (R.19; *see also* R.39-40,111,122,124,126,131,138,193,214,248,252,261,353).

10

Case 5:10-cv-00106-MFU-JGW   Document 19   Filed 02/21/12   Page 10 of 15   Pageid#: 572

Although the Appeals Council did not make specific finings as to why the additional medical and medical-related records [7] submitted by the plaintiff did not justify its denial of her request for review, it more than minimally met its obligations under the agency's regulations. *See Meyer v. Astrue*, 662 F.3d 700, 705-707 (4th Cir. 2011). As expressly stated in its denial of her request for review, the Appeals Council "considered the reasons [why she] disagree[d] with the [ALJ's] decision;" it considered the "additional evidence" she submitted; it "found" this additional evidence not to be an adequate basis to change the AJL's decision, and it concluded this evidence was "not sufficient to establish" her inability to perform sedentary work before December 31, 2001. (R.1-2).

Even if it is assumed *arguendo* that the Appeals Council was required to articulate specific findings justifying its denial of the plaintiff's request for review, it is clear both from the record as a whole, including the four additional treatment notes, that substantial evidence supports the ALJ's denial of benefits. There is simply nothing in the record to support a finding that the plaintiff's fibromyalgia was a debilitating condition prior to the expiration of her insured status. Furthermore, there is nothing in the record to support a finding that the plaintiff lacked the residual functional ability to perform sedentary work on a regular basis due to fibromyalgia and attendant pain.

---

[7] Dr. Harper's office records dated between 09/28/2000 and 11/14/2001 (R.451-4474) and miscellaneous insurance and coding information pertaining to Dr. Harper's billing prior to expiration of the plaintiff's insured status (R.477-504).

Case 5:10-cv-00106-MFU-JGW Document 19 Filed 02/21/12 Page 11 of 15 Pageid#: 573

Furthermore, the additional evidence submitted to the Appeals Council, particularly the four 2000-2001 treatment notes from Dr. Harper's office, fully corroborate the evidence upon which the ALJ relied as the basis for his rejection of Dr. Harper's opinion, and without contradiction in the record fully support the non-disability determination. *See Smith v. Chater*, 99 F.3$^d$ 635, 638-639 (4th Cir. 1996).

## C.

In this case it merits mention that the argument presented by the plaintiff relies primarily on an implied contention that the ALJ improperly weighed the evidence. The court, however, must uphold the Commissioner's final decision if it is supported by substantial evidence. Although the plaintiff may disagree with the ALJ's determination and with the action of the Appeals Council, the record demonstrates that these determinations were made after weighing the relevant factors. It is simply not the role of the court to re-weigh the conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3$^d$ at 589.

This recommendation that the Commissioner's final decision be affirmed, however, does not suggest that the plaintiff is totally free of pain and other subjective discomfort or does not have health issues. On review, the objective medical record simply fails to demonstrate that her condition during the relevant period was of sufficient severity to result in total disability from all forms of substantial gainful employment. The decision in this case for the court to make is "not whether the [plaintiff] is disabled, but whether the ALJ's finding of no disability is supported by

substantial evidence." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3$^d$ at 589). Likewise, it is for the province of the Commissioner, not the court, to resolve conflicts in the evidence. *Hays v. Sullivan,* 907 F.2$^d$ 1453, 1456 (4th Cir. 1990).

V.   **Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is rational and in all material respects is supported by substantial evidence;

2. The ALJ considered the treating source opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p;

3. Substantial evidence supports the ALJ's rejection of the treating source opinion evidence upon which the plaintiff seeks to rely;

4. In his adjudication of the plaintiff's claims, the ALJ gave proper consideration to the objective and subjective evidence related to the plaintiff's pain and other subjective symptoms;

5. The ALJ properly resolved the evidentiary conflicts about which the plaintiff complains on appeal;

6. The evidence submitted to the Appeals Council was neither new nor material, and no remand is warranted;

7. The evidence submitted to the Appeals Council controverted no fact upon which the ALJ relied;

13

8. The Commissioner met his burden of proving that the plaintiff can do work that exists in significant numbers in the national economy;

9. Substantial evidence in the record, including the evidence submitted to the Appeals Council, fully underpins the ALJ's findings, including his conclusion that that through the date she was last insured the plaintiff was not disabled within the meaning of the Act;

10. The plaintiff has not met her burden of proving a disabling condition through the date she was last insured; and

11. All facets of the Commissioner's final decision should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 21st day of February 2012.

s/ *James G. Welsh*
United States Magistrate Judge